FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 22, 2021

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK G., | No: 1:20-CV-03097-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Kathryn A. Higgs. Defendant is represented by Special Assistant United States Attorney Lars Joseph Nelson. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment, ECF No. 14, **DENIES** Defendant's Motion for Summary Judgment, ECF No. 15, and **REMANDS** the case for to the Commissioner for additional proceedings.

ORDER ~ 1

**JURISDICTION**

Plaintiff Mark G.[1] filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on August 12, 2016, Tr. 76-77, alleging disability since August 10, 2016, Tr. 216, 223, due to prostate cancer, possibility of colon cancer, depression, bipolar, and low hearing, Tr. 244. Benefits were denied initially, Tr. 134-37, and upon reconsideration, Tr. 142-55. A hearing before Administrative Law Judge Virginia Robinson ("ALJ") was conducted on May 9, 2019. Tr. 49-75. Plaintiff was represented by counsel and testified at the hearing. *Id.* The ALJ also took the testimony of vocational expert Joseph Moisan. *Id.* The ALJ denied benefits on July 19, 2019. Tr. 15-24. The Appeals Council denied Plaintiff's request for review on June 5, 2020. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3). ECF No. 1.

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 59 years old at the alleged onset date. Tr. 216. He received a

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

banking operations certificate in 1978 and completed two years of college in 1998. Tr. 245. Plaintiff's reported work history includes jobs as a care provider, customer service at a bank, customer service in retail, food inspector, teaching assistant, and porter. Tr. 245, 262. At application, he stated that he stopped working on August 10, 2016, due to his conditions. Tr. 244.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

ORDER ~ 3

Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and

mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v.*

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 10, 2016, the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairment: hearing loss, with cochlear implantation. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 20. The ALJ then found that Plaintiff has the RFC to perform "medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant must avoid concentrated exposure to excessive noises or very loud noises in an environment where he has to communicate with others." Tr. 20. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a caregiver, house manager, and food inspector. Tr. 23. Based on this step four determination, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 10, 2016, through the date of his decision. Tr. 24.

///

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him DIB under Title II of the Social Security Act and SSI benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1.      Whether the ALJ properly weighed the medical source opinions;

2.      Whether the ALJ erred at step two;

3.      Whether the ALJ proper addressed Plaintiff's symptom statements; and

4.      Whether the ALJ erred at step five.

**DISCUSSION**

**1.      Medical Source Opinions**

Plaintiff challenges the weight the ALJ assigned to the opinions of Tasmyn Bowes, Psy.D., Douglas Gray, MSW, R.A. Cline, Psy.D., and Robin Ballard, Ph.D. ECF No. 14 at 15-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight

than a reviewing physician's opinion.  *Id.*

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A.    Tasmyn Bowes, Psy.D.

On July 26, 2018, Dr. Bowes examined Plaintiff and completed a Psychological/Psychiatric Evaluation for the Washington State Department of Social and Health Services (DSHS).  Tr. 457-63.  She performed the Rey 15-item Memory Test for Malingering, and Plaintiff scored a 15 suggesting no evidence of malingering.  Tr. 458.  She administered the Beck Depression Inventory, but Plaintiff became overwhelmed with emotion, and it could not be completed.  *Id.*

On the Mental Status Exam, she stated that Plaintiff's mood was dysphoric. Tr. 461. She diagnosed Plaintiff with persistent depressive disorder, current major depression, severe. Tr. 459. She opined that Plaintiff had a moderate limitation in the abilities to understand, remember, and persist in tasks by following detailed instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, to adapt to changes in a routine work setting, to communicate and perform effectively in a work setting, to maintain appropriate behavior in a work setting, and to complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 459-60. The term moderate is defined as "a significant limitation on the ability to perform the activity." Tr. 459. She rated Plaintiff's overall severity based on a combined impact of all diagnosed mental impairments to be moderate. Tr. 460. Dr. Bowes opined that Plaintiff would be impaired as stated above for six to twelve months with available treatment. *Id*. She noted that Plaintiff was not engaged in adequate mental health treatment at the time of the examination. *Id*.

The ALJ gave the opinion little weight for three reasons: (1) it was inconsistent with the longitudinal evidence; (2) Dr. Bowes saw Plaintiff only once; and (3) Dr. Bowes saw Plaintiff during the period when he was just diagnosed with cancer. Tr. 22-23. None of these reasons were sufficient to meet the lesser standard of specific and legitimate.

The ALJ's first reason for rejecting Dr. Bowes' opinion, that it was inconsistent with the longitudinal evidence, is not specific and legitimate. The ALJ found that the opinion was "inconsistent with the longitudinal evidence documented at Finding #3, which reveals no more than mild mental limitations in the psychiatric review technique form." Tr. 23. Finding #3 is the ALJ's step two determination, and contains a paragraph finding that Plaintiff's mental allegations were inconsistent with his longitudinal mental status findings with multiple citations to the record. Tr. 19. The ALJ concluded that this resulted in no more than mild limitations on the "Part B" domains of the Psychiatric Review Technique form (PRTF). *Id*. In doing so, the ALJ failed to discuss how the medical evidence was inconsistent with Dr. Bowes' opinion specifically. *See Embrey*, 849 F.2d at 421-22 (The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct."). By only referring to her determination that Plaintiff had mild limitations in the PRTF, the ALJ failed to explain how Dr. Bowes' RFC opinion was undermined by the PRTF determination or the medical evidence discussed under Finding #3. The false comparison of the PRTF and a medical opinion addressing the RFC is highlighted by internal agency policy clearing stating that the PRTF determination is not equivalent to the RFC determination:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the

ORDER ~ 11

"paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

POMS DI 24510.006. Without a specific finding that identified what medical evidence undermined specific portions of Dr. Bowes' RFC opinion, this reason fails to meet the specific and legitimate standard.

The ALJ's second reason for rejecting Dr. Bowes' opinion, that she only saw Plaintiff once, is not specific and legitimate. The length of treatment relationship and the frequency of examinations is a factor relied upon in how to weigh medical opinions, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and Dr. Bowes only saw Plaintiff for the single evaluation, Tr. 457-63. However, Dr. Bowes' status as an examining physician dictates the standard the ALJ must meet before rejecting the opinion, *Lester*, 81 F.3d at 830 ("Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."), and does not rise to the level of specific and legitimate itself.

ORDER ~ 12

The ALJ's third reason for rejecting Dr. Bowes' opinion, that she saw Plaintiff during a period when he was just diagnosed with cancer, is not supported by substantial evidence. The ALJ stated that Plaintiff "had minimal treatment and normal mental status findings since February 2017, an indication that his mental symptoms were acute, situational, and temporary, secondary to situational stressors." Tr. 23. The situational stressor the ALJ refers to is Plaintiff's cancer, which was in remission as of February of 2017. *Id*. The ALJ repeatedly found that Plaintiff's mental health symptoms were secondary to his cancer diagnosis and treatment. Tr. 19, 23. The record supports the finding that the cancer was in remission as of February of 2017. Tr. 479. However, Dr. Bowes' opinion is from July of 2018, over a year later. Therefore, the ALJ's finding that Dr. Bowes saw Plaintiff during a period when he was just diagnosed with cancer, is not supported by substantial evidence.

The ALJ failed to provide a specific and legitimate reason for rejecting Dr. Bowes' opinion. Therefore, the case is remanded for the ALJ to properly weigh the opinion.

### B. Douglas Gray, MSW

Mr. Gray treated Plaintiff during and after the period Plaintiff was treated for prostate cancer. Tr. 435-38, 455, 501-10 (treated until June of 2017). On February 2, 2017, Mr. Gray wrote a letter stating that Plaintiff's "ability to engage in sustained work-related activities is unreliable and unpredictable." Tr. 455. The

ALJ gave this opinion little weight.  Tr. 22-23.

The Court acknowledges that Mr. Gray does not qualify as an acceptable medical source, 20 C.F.R. §§ 404.1502(a), 416.902(a), and that, generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a counselor.  20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).  However, Mr. Gray is the only treating opinion in the record to address mental health impairments.  Since the case is being remanded for the ALJ to properly address the opinion of Dr. Bowes, the ALJ will readdress the letter from Mr. Gray.

### C.    R.A. Cline, Psy.D. and Robin Ballard, Ph.D.

The remaining medical opinions from Dr. Cline and Dr. Ballard were rejected for the same reason as Dr. Bowes'.  Tr. 22-23.  However, these two opinions were penned during Plaintiff's cancer treatment: Dr. Cline evaluated Plaintiff in October of 2016, Tr. 403-08, and Dr. Ballard evaluated Plaintiff in November of 2016, Tr. 419-23.  Since Dr. Bowes' opinion demonstrates that Plaintiff's impairments potentially continued passed the duration of his cancer treatment, the ALJ will readdress these opinions on remand as well.

### 2.    Step Two

Plaintiff challenges the ALJ's determination that he had no severe mental health impairments.  ECF No. 14 at 5-1

Step two of the sequential evaluation process requires the ALJ to determine

whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id*. at 1290.

To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521, 416.921. "[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairments(s) are severe. *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

In her step two determination, the ALJ found that Plaintiff had a single physical impairment: hearing loss, with cochlear implantation. Tr. 18. The ALJ also found that Plaintiff's alleged depression, anxiety, and bipolar disorder were

nonsevere for the following reasons: (1) the mental symptoms "appeared acute, temporary, and situational"; (2) the mental health impairments were inconsistent with his minimal mental health treatment; (3) the mental health allegations were inconsistent with the claimant's longitudinal mental status findings; and (4) Plaintiff's allegations were inconsistent with his activities. Tr. 19.

Throughout her determination, the ALJ found that Plaintiff's mental health impairments were secondary to his cancer diagnosis and all symptoms ended when his cancer went into remission. Tr, 19, 23. However, this is not supported by substantial evidence. The record includes a DSHS evaluation dated over a year since Plaintiff's cancer was in remission that includes a diagnosis of depression resulting in moderate limitations in work abilities. Tr. 457-63. As part of the evaluation, Dr. Bowes completed objective testing, including the Rey 15-item Memory Test for Malingering, the Beck Depression Inventory, and a Mental Status Exam. Tr. 458, 461. Therefore, Plaintiff has set forth the evidence required under 20 C.F.R. §§ 404.1521, 416.921 to establish a medically determinable mental health impairment that continued after his cancer was in remission. This evaluation and the resulting opinion is to be readdressed by the ALJ on remand. Therefore, the ALJ's determination that Plaintiff's mental health impairments ceased when his cancer went into remission is in question and must be addressed further on remand.

The ALJ's second reason for finding Plaintiff's mental health impairments

were nonsevere, that the allegations were inconsistent with his minimal mental health treatment, cannot support the ALJ's step two determination. The Ninth Circuit has repeatedly held that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The ALJ's third reason for finding Plaintiff's mental health impairments were nonsevere, that they were inconsistent with the longitudinal mental status findings, is not supported by the record. Again, the ALJ asserts that following his cancer treatment, Plaintiff's mental health symptoms disappeared. Tr. 19. As addressed above, this is not supported by the record.

The ALJ's fourth reason for finding Plaintiff's mental health impairments were nonsevere, that they were inconsistent with his reported activities, is misleading. First, the ALJ failed to discuss the reported activities that demonstrated that Plaintiff's mental health impairments were hindering his activities. The fact that Plaintiff had difficulty attending his cancer treatment appointments. Tr. 455. He repeatedly reported suicidal thoughts. Tr. 408, 457-58. The ALJ's conclusion that the ability to drive, shop, live independently, and attend church services, Tr. 19, is not inconsistent with presence of a severe mental health impairment at step two.

Likewise, Plaintiff's attempt to work that was cut short due to layoffs and not Plaintiff's mental health impairments, Tr. 19, does not support a finding that

his mental health impairments were not severe at step two. Here, the ALJ is applying the incorrect standard at step two: that since Plaintiff's mental health impairments were not work preclusive, they are not severe. The correct standard is "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290. As such, the ALJ will readdress his step two determination regarding Plaintiff's mental health impairments at step two.

### 3. Plaintiff's Symptom Statements

Plaintiff challenges the ALJ's treatment of his symptom statements. ECF No. 14 at 12-14.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this

decision." Tr. 20. The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to readdress the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary.

**4.     Step Five**

Plaintiff challenges the ALJ's step five determination. ECF No. 14 at 16-20. The ALJ denied the claim at step four. Tr. 23-24. Therefore, there was no step five determination, and the burden never shifted to the Commissioner. However, the case is being remanded to readdress the medical opinions and Plaintiff's symptom statements. Therefore, a new RFC determination will be required and a new step four determination will be made. If the claim is not resolved at step four, then the ALJ will make a step five determination.

## CONCLUSION

Plaintiff requests that the Court remand the case for an immediate award of benefits. ECF No. 14 at 20.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health &*

*Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ should make a new step two determination addressing Plaintiff's mental health impairments, readdress the medical opinions in the record concerning Plaintiff's mental health impairments, readdress Plaintiff's symptom statements, and make a new RFC determination. In addition, the ALJ should supplement the record with any outstanding medical evidence and take additional testimony from a vocational expert at any remand proceedings.

///

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED, in part,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED this 22nd day of June 2021.



Stanley A. Bastian
Chief United States District Judge